IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **KRISTEN R.** *ex. rel.* **L.R.**[1], <br><br>               Plaintiff, <br><br>     v. <br><br> **MARTIN O'MALLEY**, Commissioner of Social Security, <br><br>               Defendant. | Case No. 6:23-cv-431-SI <br><br> **OPINION AND ORDER** |

Katherine L. Eitenmiller and Katie J. Taylor, WELLS, MANNING, EITENMILLER & TAYLOR PC, 474 Willamette Street, Eugene OR 97401. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin Danielson, Executive Assistant U.S. Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Thomas Zimarowski, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, Social Security Administration, 6401 Security Boulevard, Baltimore, MD 21235. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Kristen R., on behalf of her minor child, L.R., seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

her application on behalf of L.R. for Supplemental Security Income ("SSI"). For the reasons discussed below, the Court affirms the decision of the Commissioner.

## STANDARD OF REVIEW

The decision of the administrative law judge ("ALJ") is the final decision of the Commissioner in this case. The district court must affirm the ALJ's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla" and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the ALJ's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the ALJ. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). A reviewing court, however, may not affirm the ALJ on a ground upon which the ALJ did not rely. *Id.*; *see also Bray*, 554 F.3d at 1225-26.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff protectively filed an application for SSI for L.R. on January 8, 2020, alleging disability beginning on January 1, 2012. AR 61, 72, 212-33.[2] L.R.'s date of birth is May 29, 2011, and he was seven months old at the time of the alleged onset of disability. AR 16. The agency denied L.R.'s claim both initially and upon reconsideration, and Plaintiff requested a hearing. AR 92-96, 98-100, 134-36. Plaintiff appeared for a telephonic hearing before an ALJ on March 1, 2022. AR 31-60. The ALJ issued a decision denying Plaintiff's claim for L.R.'s benefits. AR 15-24. Plaintiff requested review of the ALJ's decision, which the Appeals Council denied. AR 1. Accordingly, the ALJ's decision is the final decision of the agency and Plaintiff seeks judicial review of that decision.

### B. The Sequential Analysis

A child claimant under the age of 18 is disabled if he or she can demonstrate "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). Under 20 C.F.R. § 416.924(a), child disability claims are assessed according to a three-step sequential evaluation process:

1. Is the child performing "substantial gainful activity?" *Id.* § 416.924(b). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. *Id.* § 416.910. If the child is performing such work, he or she is not disabled within the

---

[2] The application is dated January 2, 2020, ECF 212, 232, but it appears that Plaintiff filed the application on January 8, 2020, ECF 61, 72.

meaning of the Act. *Id*. § 416.924(b). If the child is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the child's medically determinable impairment "severe" under the Commissioner's regulations? *Id*. § 416.924(c). An impairment or combination of impairments is "severe" if it is more than "a slight abnormality or combination of slight abnormalities that causes no more than minimal functional limitations." *Id*. If the claimant has a medically determinable severe impairment, the analysis proceeds to step three.

3. Does the child's severe impairment "meet, medically equal, or functionally equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? *Id*. § 46.924(d). An impairment "causes marked and severe functional limitations if it meets or medically equals the severity of a set of criteria for an impairment in the listings, or if it functionally equals the listings." *Id*. § 416.924(d). If so, then the child is disabled. *Id*. If the impairment does not meet, medically equal, or functionally equal one or more of the listed impairments or does not meet the duration requirement, the child is not disabled under the Act. *Id*. § 416.924(d)(2).

If the child has "a severe impairment or combination of impairments that does not meet or medically equal any listing, [the Commissioner] will decide whether it results in limitations that functionally equal the listings." *Id*. § 416.926a(a). In assessing how the child's functioning is affected in all of the child's activities, the following six domains are considered: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for him or herself; and (6) health and physical well-being. *Id*. § 416.926a(b)(1).

To "functionally equal" any listing, the impairment "must be of listing-level severity; i.e., it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." *Id*. § 416.926a(a). A "marked" limitation is one that "interferes seriously with [the

PAGE 4 – OPINION AND ORDER

child's] ability to independently initiate, sustain, or complete activities . . . the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.* § 416.926a(e)(2)(i). An "extreme" limitation is one that "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities . . . the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id.* § 416.926a(e)(3)(i).

### C. The ALJ's Decision

At step one, the ALJ found that L.R. had not engaged in substantial gainful activity since the application date. AR 16. At step two, the ALJ found that L.R. suffered from the severe impairments of obesity, autism spectrum disorder (without serious language impairment, borderline IQ), and mood disorder not otherwise specified (anxiety and depression). *Id.* At step three, the ALJ found that L.R.'s impairments did not meet, medically equal, or functionally equal a listing. AR 16-18. Specifically, the ALJ found that L.R. had: (1) less than a marked limitation in acquiring and using information; (2) less than a marked limitation in attending and completing tasks; (3) less than a marked limitation in interacting and relating with others; (4) no limitation in moving about and manipulating objects; (5) less than a marked limitation in caring for himself; and (6) less than a marked limitation in health and physical well-being. AR 18-19. Accordingly, the ALJ found that L.R. was not disabled.

## DISCUSSION

Plaintiff argues that the ALJ committed harmful error in her decision in two ways. First, Plaintiff assigns error to the ALJ's assessment of testifying medical expert, Stephen Rubin, Ph.D. Second, Plaintiff argues that the ALJ failed to provide germane reasons when discounting Plaintiff's lay witness testimony about L.R.

A. **Dr. Rubin's Testimony**

    1. **General Standards for Reviewing Medical Evidence**

Plaintiff, on behalf of her minor child, filed an application for SSI in January 2020. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.920c governs how an ALJ must evaluate medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. § 416.920c(a)-(b). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 416.920c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support his or her opinion. *Id.* § 416.920c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 416.920c(c)(2).

    An ALJ may also consider a medical source's relationship with the claimant by looking to factors such as the length of the treatment relationship, the frequency of the claimant's examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether there is an examining relationship. *Id.* § 416.920c(c)(3). An ALJ is not, however, required to explain how he or she considered these secondary medical factors, unless he or she

finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 416.920c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 416.920c(b). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Woods*, 32 F.4th at 792 ("Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions is likewise incompatible with the revised regulations. . . . Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." (citation omitted)).

### 2. Standards under *Howard*

In cases involving minor claimants, the ALJ must ensure that a medical expert evaluates the minor claimant's case in its entirety. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1014 (9th Cir. 2003); Social Security Acquiescence Ruling ("SSAR") 04-1(9), 69 Fed. Reg. 22578-03 (Apr. 26, 2004), *available at* 2004 WL 875081. Failure to do so is harmful error. *Howard*, 341 F.3d at 1014.

In *Howard*, the Ninth Circuit held that even though substantial evidence supported the ALJ's finding that the minor plaintiff was not disabled, the ALJ nevertheless committed harmful error by denying the plaintiff's request for a medical expert to review her medical record. *Howard*, 341 F.3d at 1012-14. The Ninth Circuit explained that under 42 U.S.C. § 1382c, the ALJ must ensure that a medical expert reviews the minor claimant's case as a whole. *Id.* at 1014. Section 1382c provides:

PAGE 7 – OPINION AND ORDER

> In making any determination under this subchapter . . . with respect to the disability of an individual who has not attained the age of 18 years . . . , the Commissioner of Social Security shall make reasonable efforts to ensure that a qualified pediatrician or other individual who specializes in a field of medicine appropriate to the disability of the individual (as determined by the Commissioner of Social Security) evaluates the case of such individual.

42 U.S.C. § 1382c(a)(3)(I). The Ninth Circuit explained that reliance on specialized medical opinions do not satisfy the requirement that the ALJ make reasonable efforts to ensure that a qualified individual evaluates "the case" of the minor claimant. *Id.* at 1014; *see also id*. at 1014 n.2 ("There is a distinction . . . between having an expert evaluate a claimant with respect to that expert's particular specialty, and having an expert evaluate a claimant's case in its entirety, considering all of the medical records and determining whether those indicate that the claimant is disabled within the meaning of the Social Security Act.").

After *Howard*, the Social Security Administration issued SSAR 04-1(9), explaining that *Howard* misinterpreted the applicability of § 1382c(a)(3)(I), but that going forward, the Social Security Administration would apply the *Howard* decision in the Ninth Circuit. *See* 69 Fed. Reg. at 22580-03 (explaining that the word "determination" is a term of art only applicable to "determinations made by a State agency and not to decisions made by ALJs or AAJs (when the Appeals Council makes a decision)"). The SSAR further notes that a state agency consultant may provide the requisite comprehensive case evaluation. *Id*. If an ALJ does rely on a state agency consultant that properly evaluates the claimant's entire case, the record must also contain evidence of the consultant's qualifications. *Id*.

### 3. Hearing Testimony and the ALJ's Response

At the hearing, Dr. Rubin testified that he reviewed L.R.'s medical records beforehand but did not review the educators' questionnaires that were also part of the record. AR 36. The ALJ then asked Dr. Rubin to opine on the paragraph B criteria, the first being understanding,

remembering, and applying information. AR 37. Dr. Rubin stated L.R. would have a moderate limitation and that "he does seem to be capable of learning" and that he is "not developmentally disabled." *Id*. Dr. Rubin then opined that L.R. has a marked limitation in the area of interacting with others because he has "temper tantrums" and can be "very obstinate." *Id*. In the area of concentrating, persisting or maintaining pace, learning and remembering, Dr. Rubin opined that L.R. has a marked limitation. AR 38. For L.R.'s ability to adapt and manage oneself, Dr. Rubin gave him a marked limitation because he "show[s] anger issues. He can get frustrated pretty easily and he can be difficult to control." *Id*. When asked by the ALJ what Dr. Rubin was basing his opinions on, he said "[m]ostly, the evaluations that were done by the psychologist on two different dates."[3] AR 39. When asked by the ALJ if he was looking at the educator reports, Dr. Rubin answered that he was looking through them as the hearing was occurring. AR 40. The ALJ proceeded to ask Dr. Rubin about the six areas of functional limitations, which overlap with the paragraph B criteria. Dr. Rubin opined that L.R. had "marked" limitations in domains one, two, and three. AR 39-42.

    The ALJ commented that Dr. Rubin's opinions were at odds with what L.R.'s educators stated about his performance. AR 44-49. Specifically, the ALJ pointed to Lara Castillo's opinion, L.R.'s classroom teacher in 2020, who rated L.R. as having a "a slight problem" in 10 subareas in the domain of acquiring and using information. AR 44 (citing AR 345). Ms. Castillo stated "[L.R.] is an intelligent boy. He struggles slightly in that if he doesn't understand right away he often doesn't have the stamina to push on and try to learn. He has shown he is capable of learning in a Zoom class!" AR 345. The ALJ found this to be at odds with Dr. Rubin's rating of

---

[3] The first evaluation done in 2019 for L.R. by Scott Alvord, PsyD, was not included in the record. The only available psychological consultative evaluation is on pages 458-62 of the Administrative Record and was done on April 7, 2021.

"marked" in domain one, and questioned Dr. Rubin, who explained "I think I looked at the IQ score . . . plus[] his psychological issues, and thought that [he] really needs extra help." AR 45.

The ALJ also reviewed a teacher's report by Christy Perrigo, AR 342, which is a report Dr. Rubin stated that he relied on in assessing L.R. with such serious limitations. AR 46. The ALJ asked why Dr. Rubin gave L.R. a "marked" limitation in domain three when his teacher observed no issues in that area, and Dr. Rubin reasoned that this was due to L.R.'s combative relationship with his mother. AR 45. After the ALJ pointed out several inconsistencies between Dr. Rubin's opinion and those of L.R.'s educators, Dr. Rubin's response was that:

> the 77 IQ means he's going to struggle academically, so I had put that into account, as well, Judge. I think you're pointing out some very good points, and I think that this young man is quite likeable, and that's what the teachers are saying, and when he understands something he seems to progress. His stamina is a problem. He clearly gets frustrated at times, but I think that 77 IQ is also an important characteristic of his learning, and I think he will, at times, get frustrated, and I hope he can control, because anger is one of the issues, which the psychologist pointed out. He hasn't acted out, as far as I know in school, but the last couple of years he's been on Zoom, so I don't know if that would be a problem when he returns to the academic environment. But I'm glad he hasn't acted out, but I do think he could use some extra help, and I think once he understands what he's supposed to do, he seems to be able to progress, which is great.

AR 47-48. The ALJ then pointed out that Dr. Rubin's own testimony was inconsistent with his "marked" limitation in interacting with others, as he said L.R. is a likeable guy and well-liked by his teachers. AR 48. Lastly, the ALJ found it inconsistent that Dr. Rubin was stating L.R. has a history of "hitting other kids," but that claim was made by L.R.'s mother rather than L.R. himself. AR 49. L.R.'s academic records do not indicate such behavior, but instead demonstrate L.R.'s cooperation with his teachers and peers and that he can follow rules and respect adults in authority. AR 313, 363, 375. In the end, after L.R.'s counsel asked the ALJ if she was crediting the medical expert's testimony, the ALJ stated that she "certainly [is] not crediting [it] all, so I'm

PAGE 10 – OPINION AND ORDER

going to have to go back through this again, because my impression was completely the opposite in reading it." AR 53.

### 4. Analysis

Here, it is undisputed that the ALJ made reasonable efforts to ensure a qualified individual, Dr. Rubin, reviewed the entirety of L.R.'s record consistent with *Howard*. In fact, the ALJ actively sought to reschedule the administrative hearing to ensure that a qualified child psychologist reviewed the entirety of L.R.'s case. AR 35. Dr. Rubin has a Ph.D. in clinical psychology, a M.S. in school psychology, and a bachelor's degree in psychology. AR 492. It is undisputed that Dr. Rubin's credentials qualify him as a specialist for purposes of the mandated case evaluation in a child disability case. *Id*. Based on his review and interpretation of the entire record, Dr. Rubin concluded Plaintiff was "marked" in three of the functional domains. AR 37-39.

The ALJ found Dr. Rubin's medical opinion at the hearing unpersuasive, as it was inconsistent with the majority of the record. The ALJ reasoned:

> While supported by reference to the claimant's behavior, it is entirely inconsistent with the record as a whole, including every other opinion available in the record, such as statements from multiple educational professionals who have actually personally observed the claimant. While Dr. Rubin contends that the claimant has a marked limitation in interacting and relating with others, one teacher describes him as respectful in a classroom setting. Moreover, per his mother's report . . ., despite having social difficulties, the claimant has friends his own age, can make new friends, and generally gets along with adults/authority figures, although he can be disrespectful and get frustrated. While Dr. Rubin opined that the claimant has a marked limitation in attending to and completing tasks, this is inconsistent with testing during the psychological evaluation. Moreover, a marked limitation in adapting or managing oneself due to emotional lability is inconsistent with his ability to be engaged and respectful in a classroom setting . . . .

AR 23 (citations omitted).

PAGE 11 – OPINION AND ORDER

Plaintiff argues that the ALJ's evaluation of Dr. Rubin's opinion was not supported by substantial evidence. Plaintiff asserts that the ALJ "construct[ed her] own case evaluation from the evidence in the record" indicating "independent views of [L.R.]'s situation" rather than the full case evaluation Dr. Rubin was called to provide consistent with 42 U.S.C. § 1382c(a)(3)(I). *See Howard*, 341 F.3d at 1014. Defendant responds that substantial evidence supported the ALJ's evaluation of the entire case, and properly found that Dr. Rubin's opinion was inconsistent with every other opinion in the record. Defendant further asserts that the ALJ's conclusion was reasonable, and Plaintiff's disagreement with such conclusion is not a sufficient ground for remand. The Court agrees.

Plaintiff mischaracterizes the guidance set forth in *Howard*. Plaintiff likens the ALJ in *Howard* to the ALJ in this case by asserting that she constructed her own case evaluation which led to "independent views" of L.R.'s situation instead of conducting a full case evaluation called for by § 1382c under *Howard*. The court in *Howard*, however, held that the ALJ harmfully erred not due to his evaluation of the child's impairments, but because no effort was made to ensure a qualified individual examined the entirety of the child's case. *Id*. Such is not the case here, as it is undisputed that ALJ made reasonable efforts to have a qualified individual review the entirety of L.R.'s case. The purpose of *Howard*, 42 U.S.C. § 1382c(a)(3)(I), and SSAR 04-1(9) is to ensure ALJs make reasonable efforts to have a medical expert review a minor claimant's case as a whole. Neither the guidance in *Howard*, 42 U.S.C. § 1382c(a)(3)(I), or SSAR 04-1(9) overrides an ALJ's fundamental duty to evaluate medical opinions using 20 C.F.R. § 416.920c. Plaintiff acknowledges this, as she asserts Dr. Rubin's opinion was *supported* by his own explanation and *consistent* with the entirety of the record. Nevertheless, Plaintiff cites *Torres v. Secretary of Health & Human Services*, 870 F.2d 742, 744 (1st Cir. 1989), to persuade the Court that a non-examining doctor called to testify as a medical expert at the administrative hearing may be due

greater weight because they are subject to cross-examination. The Court is not convinced, as ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. § 416.920c(a)-(b).

After a review of the record the Court concludes that the ALJ's evaluation of Dr. Rubin's testimony is supported by substantial evidence. The ALJ analyzed the entirety of the evidence in the record, which includes results from psychological and intellectual functioning tests, together with reports from the school principal, Plaintiff's pediatrician and teachers. AR 16-23. The ALJ recognized that Dr. Rubin's opinion was inconsistent with, and unsupported by, the cognitive testing done on examination by Dr. Alvord that showed L.R.'s ability to adequately score in a number of areas of mental functioning. AR 20-23. Dr. Alvord observed that though L.R. has a "tendency towards tangentiality," his speech was easily understood. AR 460. His long-term memory was adequate for dates and details of past events, and his short-term memory was adequate. *Id*. L.R.'s immediate/working memory was adequate as well. *Id*. He recited three digits forward and two digits backward. *Id*. Though he refused to complete serial seven's or serial three's, he calculated six plus four correctly. *Id*. "He spelled the word THE correctly but spelled the word TREE t-r-e. He was able to spell the word THE backward." *Id*. Dr. Alvord opined that L.R.'s "psychiatric prognosis [was] fair with appropriate treatment." AR 461.

Dr. Alvord's test results are mirrored in L.R.'s academic records and his educators' observations. Though L.R. "may need extra help with new activities or assignments, he is fine once he knows what to do." AR 20 (citing AR 312). L.R's Report Card reflects this observation and shows that he scored a "3" in many of the academic performance subject matters, indicating that he "generally meets learning targets." AR 342. Though L.R. also showed that he "meets some learning targets" by scoring a "2" in other categories, he did not fail any of his learning

targets. *Id*. Despite his mother's claims that he frequently misses school, his record shows that he was only absent nine times during the 2021 school year. *Id*.

Moreover, the ALJ acknowledged L.R.'s IQ and his tendency towards frustration but explained that she found Dr. Rubin's opinion unpersuasive because she did not find the level of severity identified in Dr. Rubin's opinion to be consistent with the evidence of L.R.'s educational record, as described by multiple sources described by the ALJ. AR 20-23. First, Ms. Castillo opined that she enjoyed working with L.R. AR 351. She said he was "respectful and puts forth good effort in class to understand and learn the concepts we work on. He appears to be kind, and he is respectful in his words and actions in Zoom." *Id*. Second, though L.R.'s other teacher, Ms. Corrogen, noted that he "gets in scuffles w[ith] his peers and has difficulty occasionally working in groups," he takes a break to reset and does not get extra or an unusual degree of structure or support. AR 352. Third, L.R.'s principal has known him since 2016 and opined that his reading level is above grade level, his math is below grade level, and that his written language level is within the average range. AR 372. L.R.'s principal noted his patterns of absences and tardies and stated it was "similar" to other school years. *Id*. Despite his trouble in math, L.R. "gets support in [a] small group with [his] teacher" to fill that gap. AR 373. Fourth, L.R.'s teacher, Ms. Sawyer, opined that L.R. has no issues at all in acquiring and using information, and stated that he is a very capable student despite getting distracted. AR 361-62. In accordance with agency regulations, the ALJ's rationale is valid because "[t]he more consistent a medical opinion[] . . . is with the evidence . . . in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. § 416.920c(c)(2).

Here, the ALJ's conclusion that Dr. Rubin's opinion was inconsistent with the entirety of the record is supported by substantial evidence. Plaintiff's only real objection to the ALJ's analysis is that she erred because she selectively focused on the relative strengths identified by

PAGE 14 – OPINION AND ORDER

the school professionals. But this amounts to no more than an argument about an alternative, reasonable interpretation of the evidence. The ALJ's consideration and treatment of Dr. Rubin's opinion is supported by substantial evidence and was based on a permissible determination within the ALJ's province. When evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the reasonable interpretation of the ALJ. *See Batson*, 359 F.3d at 1193. Accordingly, the Court will not disturb the ALJ's findings regarding Dr. Rubin's testimony.

## B.  Lay Witness Testimony

Plaintiff, a lay witness because she is not the claimant, argues that the ALJ provided no explanation whatsoever as to why she rejected Plaintiff's testimony. This contention is without merit. The ALJ provided reasons for discounting Plaintiff's statements.

Lay witness testimony regarding a claimant's symptoms or how an impairment affects their functional capacity is competent evidence. *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Thus, an ALJ may not reject such testimony without comment. *Id*. In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

Plaintiff reported at the hearing that L.R. continues to significantly struggle. She claims that he has "problems with kids at school every single day." AR 54. She says that she has "been having a really hard time getting him to go to school because of him not getting along with other kids, so that's why he's been missing school lately." *Id*. She claims that L.R. is "very defiant to [her]" and that "[h]e doesn't like authority." AR 56. When asked about L.R. completing his schoolwork, she said "he's been doing really good with . . . coming home and doing his spelling

PAGE 15 – OPINION AND ORDER

tests and things like that. He is behind though, I believe, in some assignments, but . . . it's just hard for him to stay motivated." *Id*. When the ALJ asked her why she believed that was, she answered "[h]e had a heat stroke when he was three and he lost consciousness for a long time" and ever since then "he's just been a little bit different." *Id*. Lastly, she stated that "his anger issues and whatever is going on psychologically is starting to really progress a lot lately." AR 59.

After summarizing Plaintiff's testimony, the ALJ discounted Plaintiff's statements regarding L.R.'s behavioral problems and limitations in personal hygiene, noting that reports from school personnel, Dr. Alvord, and L.R.'s pediatrician do not support the degree of limitations alleged by Plaintiff. AR 20-21. The ALJ properly gave specific, germane reasons for rejecting the intensity and limiting effects allegedly caused by L.R.'s impairments. *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). For example, the ALJ found school records show that L.R. demonstrated slight or no limitations in the domain in interacting and relating to others:

> One teacher contends that the claimant has no limitations in this domain and describes him as respectful in class, and another teacher opines that the claimant only has slight limitations in this area. While the claimant's principal suggests slightly greater limitations in this functional domain, he also notes that the claimant is not on any sort of behavior plan to address problematic behavior.

AR 20 (internal citations omitted).

Additionally, despite Plaintiff's claims that L.R. is "not on task with that at all" when referring to his ability to brush his teeth or take showers, the ALJ found that he presented with "adequate grooming and hygiene" at the consultative examination with Dr. Alvord, and cited other reports by L.R.'s educators and his mother regarding his adequate grooming and grooming ability. AR 21 (citing AR 271, 354, 365, 377, 459). Plaintiff herself wrote in the child function report that he is able use zippers, button clothes, take a bath or shower, comb and wash hair by himself, and that "[h]e could do these things he just doesn't have the desire to do them." AR 271.

The ALJ acknowledged this inconsistency and stated "while [L.R.'s mother] reports he does not do a number of other activities on his own, she advises that this is due to an unwillingness to, for example, pick up his toys, rather than an inability to do so." AR 21.

In combination, these are germane reasons to discount statements from Plaintiff. The ALJ discussed these inconsistencies at length when addressing the lay witness testimony and the medical source opinions of Dr. Alvord and Dr. Rubin. AR 20-21, 23. The ALJ "need only point to those reasons" to reject the lay witness testimony of Plaintiff. *Molina*, 674 F.3d at 1114. Therefore, the ALJ properly considered Plaintiff's lay witness testimony in the ALJ's evaluation of the case and gave legally sufficient reasons for discounting allegations that were inconsistent with other evidence in the record and her determination of non-disability.

## CONCLUSION

The Court AFFIRMS the Commissioner's decision that L.R. was not disabled.

**IT IS SO ORDERED**.

DATED this 21st day of October, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge